Argued and submitted June 2, reversed and remanded June 23, 1987

LANGE et al,
*Petitioners on review,*

*v.*

MINTON,
*Respondent on review.*

(TC 149160; CA A39460; SC S33830)

738 P2d 576

Michael E. Swaim, Salem, argued the cause for petitioners on review. With him on the brief was Swaim, Betterton and Eder, P.C., Salem.

Samuel R. Blair, Salem, argued the cause for respondent on review. With him on the response was Blair, MacDonald, Jensen, Pagel & Larson, Salem.

PETERSON, C. J.

## PETERSON, C. J.

This is an action for personal injuries sustained by a three-year-old boy. The plaintiff[1] alleges that "he was bit in the face by defendant's dog which was, at the time, running at large, off of defendant's property, in violation of Salem City Ordinance SRC 91.005 and 91.0l5."

The parties stipulated to these facts:

"1. At all relevant times, plaintiffs and defendant were residents of the City of Salem, County of Marion, State of Oregon.

"2. On May 28, 1982, at approximately 3:15 p.m., defendant's dog, an Irish Setter and Labrador mix weighing approximately 90 lbs., was running free off of defendant's property, in near proximity to property belonging to Theordore [sic] C. Lange, plaintiff's father.

"3. On that date and at that time, defendant's dog caused injury to the face of plaintiff Theodore S. Lange, the three year old son of Theodore C. Lange, causing pain, suffering, and permanent injury in the nature of scarring to plaintiff's face.

"4. At the time of the attack by defendant's dog, defendant did not know, nor have reason to know, that the dog had any vicious propensities."

The defendant moved for summary judgment asserting that "injury from dog bites is not within the area of risk the running at large provision was designed to avoid."[2] The trial court granted the motion and the plaintiff appealed.

The Court of Appeals affirmed. *Lange v. Minton,* 84 Or App 216, 732 P2d 960 (1987). Its per curiam opinion read as follows:

"Affirmed. *Newport v. Moran,* 80 Or App 71, 721 P2d 465, *rev den* 302 Or 35, 726 P2d 934 (1986); *Kathren v. Olenik,* 46 Or App 713, 613 P2d 69 (1980)."

---

[1] There are two plaintiffs. One is the minor plaintiff by his guardian *ad litem.* The other plaintiff is the father of the minor plaintiff, seeking recovery of medical expenses. We will refer to "the plaintiff" as if there were but one — the minor plaintiff — unless the context requires otherwise.

[2] The plaintiff also moved for summary judgment. At oral argument here, his attorney conceded that the plaintiff was not entitled to summary judgment.

When the attack by the dog occurred, the Salem ordinance, SRC 91.0l5(a)(1), provided:

"(a)   The following acts or conditions are hereby declared to be public nuisances, and it shall be unlawful for any owner or custodian of an animal to cause, suffer, permit, keep, or maintain any such nuisance;

"(1)   An animal, other than a cat of a species felis catus, found running at large, or which has run at large on two or more occasions."

SRC 91.005(g) reads:

" 'Running at large' means off or outside the premises possessed or controlled by the owner or custodian of the animal or a person who has consented that the animal be upon such premises, except such animals who may be under control by use of a leash, harness, cage, or other effective physical restraint, or may be in or upon any vehicle with the consent of the owner or person in charge of the vehicle."

The plaintiff's sole claim is that the defendant is negligent *per se* for having violated the ordinance.

One preliminary issue requires discussion. The ordinance makes it unlawful "for any owner or custodian * * * to cause, suffer [or] permit, [an animal to run at large]." The defendant asserts that there was no evidence that "shows any fault on defendant's part which relates to the question of 'permitting' his dog to run at large," and that "the stipulated facts * * * were enough to show his lack of negligence in allowing the dog to run at large, and that it was therefore up to the plaintiffs to present opposing evidence of negligence by affidavits or otherwise."

In order to make out a violation of the ordinance on trial, the plaintiff would be required to show that the owner caused, suffered or permitted the dog to run free. The language of the ordinance implies some element of fault — knowledge, consent, willingness or negligence — on the owner's part that the dog run free. *Schwerdt v. Myers,* 297 Or 273, 277, 683 P2d 547 (1984); *Watzig v. Tobin,* 292 Or 645, 658, 642 P2d 651 (1982); *Parker v. Reter,* 234 Or 544, 549, 383 P2d 93 (1963). *See also Kathren v. Olenik, supra,* 46 Or App at 723.

The defendant, however, moved for summary judgment. The stipulated facts do not reveal, one way or the other,

why the defendant's dog was "running free off of defendant's property" on May 28, 1982. The dog may have escaped an enclosure, or the dog may have been let out by the owner. We cannot say, from the stipulated facts, whether the defendant caused, suffered or permitted the dog to be "running free" (using the words of the stipulation). The defendant, as the moving party, must show that he "is entitled to a judgment as a matter of law." ORCP 47C. On this issue the defendant loses, for the evidence fails to show, one way or the other, why the dog was "running free off of defendant's property."

■    The defendant can still prevail if the ordinance otherwise is inapplicable. This court has not heretofore considered whether violation of such an ordinance, in the absence of a defense, will create civil liability. The two conventional tests have been (1) whether the injured person is a member of the class intended to be protected, and (2) whether the harm is of the kind which the statute or ordinance was intended to prevent. *Miller v. City of Portland,* 288 Or 271, 276, 604 P2d 1261 (1980).

The standard of conduct of persons may be prescribed by statute or ordinance. When a statute or ordinance requires certain acts to be done or avoided, a violation of the statute or ordinance, in the absence of a defense, will create civil liability if the two tests are met.

The Court of Appeals decided that the two tests were not met, citing its earlier decisions in *Kathren v. Olenik, supra* and *Newport v. Moran, supra.* In *Kathren,* the ordinance provided:

"SECTION 2.   DEFINITIONS.

"A.    As used in this ordinance, unless the context requires otherwise:.

"* * * * *

"7.    'DANGEROUS DOG' means any dog that has, due to the lack of the exercise of proper and adequate supervision and control by its owner, demonstrated a propensity to do an act harmful in its character to human beings or animals, regardless of whether done in a playful or hostile manner.

"* * * * *

"12.    'DOG RUNNING AT LARGE' means a dog off or outside the premises of the owner, not restrained by a rope,

line, leash, chain, or other similar means, or not under the immediate control, restraint, or command of an owner thereof. If a dog is not restrained by a tether of some kind, is not at heel or not a working dog in the field, that dog shall be deemed 'at large.'

"* * * * *

"16. 'VICIOUS DOG' means any dog that has, due to its size, nature of other characteristics, demonstrated a disposition or propensity to do an unreasonable act harmful in its character to human beings or animals, done in a hostile manner.

"* * * * *

"SECTION 4. PROHIBITED ACTIVITIES.

"A. It shall be unlawful for any person:

"* * * * *

"2. To be the owner of a dog which he fails to prevent from running at large.

"3. To be the owner of a dangerous dog.

"4. To be the owner of a vicious dog.

"5. To be the owner of a dog which he fails to prevent from being a public nuisance by:

"* * * * *

"b. Biting a person or animal;

"* * * * *."

Concerning Section 2, the "running at large" provision of the ordinance, the court stated:

"In addition plaintiff contends defendants are negligent *per se* by allowing the dog to run at large. * * *.

"* * * * *

"Assuming there was sufficient evidence for the jury to determine that the defendants were at fault for failing to prevent the dog from running at large, the question remains whether injury from a dog bite is within the area of risk intended to be avoided by the running at large provisions. We conclude it is not.

"Other portions of the ordinance address the problem of injury from dangerous or vicious dogs. As we have construed those provisions, an owner is liable only if the dog has demonstrated dangerous or vicious propensities. Likewise, a dog owner who fails to prevent the dog from becoming a nuisance

by biting a person is liable only if he knows or has reason to know of a risk that the dog will bite. The implication of the ordinance as a whole is that the dog owner has a duty to prevent injury by biting only if he knew or could have known the dog had a propensity to bite. This evinces concurrence with the general knowledge that dogs as a class of animal do not normally attack human beings. Because it is not reasonably foreseeable that dogs will attack persons, injury from dog bites is not within the area of risk the running at large provision was designed to avoid.

"It may be, as plaintiff argues, that dog bites can be prevented by confining dogs. But the fact that the running at large provision may incidentally prevent the injury which occurred does not mean it was designed for that purpose.

"The evidence did not support submission of the case to the jury on the theory of negligence *per se* for violation of the dog control ordinance."

46 Or App at 723-724.

This line of reasoning was followed in *Newport v. Moran, supra,* in which the court stated as to a similar ordinance:

"We think * * * that the ordinance was intended to protect public and private owners from having dogs defecate on their property, urinate on their plants, shrubs and grass, dig in their soil and harass their pets and livestock as well as wild animals and birds, all of which are activities commonly expected of dogs."

80 Or App at 76 n 4.

We do not agree.

The full text of the ordinance in the case at bar, SRC 91.015(a), is as follows:

"(a) The following acts or conditions are hereby declared to be public nuisances, and it shall be unlawful for any owner or custodian of an animal to cause, suffer, permit, keep, or maintain any such nuisance:

"(1) An animal, other than a cat of the species felis catus, found running at large, or which has run at large on two or more occasions.

"(2) A vicious animal.

"(3) A dog which has, on two or more days during any

ten-day period, barked, howled, whined, growled, or otherwise created persistent or constant noise whereby the peace and quiet of the occupant of a dwelling unit is unreasonably disturbed.

"(4)  An exotic, wild, or dangerous animal as provided in SRC 91.410."

The ordinance has several manifest objectives. One is peace and quiet. SRC 91.015(a)(3). Another is to prevent injury. Subsections (2) and (4) make it illegal to keep a "vicious" or "dangerous" animal. We read those sections entirely to prohibit the keeping of such animals within the city, whether or not the animals are on a leash, in a harness, or in a cage. The Salem City Council intended that there be *no* vicious or dangerous dogs in Salem, and that other dogs would be leashed or otherwise restrained while away from the owner's premises.

We read SRC 91.015(a)(1), the "running at large" subsection, to say, in effect: It is unlawful to cause or permit a dog to run at large off the owner's premises, unless the dog is on a leash, in harness, caged, in or under some other effective physical restraint, or in a vehicle. We think that a likely purpose of the ordinance was to prevent persons from exposure to the risk of injury from dogs running at large, whether from being knocked down (as in *Newport v. Moran, supra*), or from being bitten (as in *Kathren v. Olenik, supra*).

Subsections (2) and (4) prohibit even *keeping* dangerous or vicious animals. Subsection (1) requires dogs to be restrained outside the owner's premises. In *Parker v. Reter, supra,* we held that the "run at large" livestock statute there involved extended to the protection of persons using the highways from injury. Unrestrained dogs present many of the same hazards to traffic as livestock running free.

Under the Court of Appeals' reasoning, the owner of a dog running at large would be liable for property damage to shrubs and for injuries to other people's pets but not to other people's children. We give the ordinance here involved a broader meaning.

Though we might agree with the Court of Appeals that "dogs as a class of animals do not normally attack human beings," *Kathren v. Olenik, supra,* 46 Or App at 724, dogs do

bite people.[3] We believe that the ordinance addresses hazards beyond property damage and harassment of birds and animals and extends to injuries from biting by dogs, even first bites. The plaintiff is within the protected class and the harm is of the kind the ordinance was intended to prevent.[4]

Accordingly, the decisions of the Court of Appeals and trial court are reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

---

[3] Although we do not vouch for the correctness of the figures below, we know that dog bites are not an infrequent occurrence. An article in the Journal of the American Medical Association states:

"The incidence of hospital-treated facial injuries caused by dog bites was determined from a population-based study involving Dane County, Wisconsin, hospitals during 1978 and 1979. Annual rates were shown to be 152 per 100,000 for ages 0 to 4 years, 128 per 100,000 ages 5 to 9 years, and 62 per 100,000 for ages 10 to 14 years. Severe facial injuries from dog bites were found almost exclusively in children younger than 10 years. If these rates apply to children in the US population, then an estimated 44,000 facial injuries, 16,000 of them severe, caused by dog bites are seen in hospitals each year. The cumulative incidence of facial injuries from dog bites for children to age 14 years is 1.6%."

Journal of the American Medical Association, June 22/29, 1984, at 3265.

An article in Current Health, April, 1984 at 12, states, "One million people are bitten by dogs each year * * *."

[4] We emphasize that we are interpreting only this ordinance. To the extent that the ordinances construed by the Court of Appeals in *Kathren v. Olenik,* 46 Or App 713, 613 P2d 69 (1980), and *Newport v. Moran,* 80 Or App 71, 721 P2d 465 (1986), cannot be distinguished, the Court of Appeals' holdings in these cases are doubtful precedents for future cases arising on those ordinances.