**Melissa EGENREITHER, a Minor, by and through her Next Friend and Natural Father, Michael Egenreither, and Michael Egenreither, Individually, Respondent,**

v.

**Sandra CARTER, Appellant.**

**No. ED 75956.**

Missouri Court of Appeals,
Eastern District,
Division Five.

May 16, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2000.

Application for Transfer Denied Aug. 29, 2000.

Martin J. Buckley, St. Louis, for appellant.

Robert H. Pedroli, Clayton, for respondent.

LAWRENCE G. CRAHAN, Judge.

Sandra Carter ("Defendant") appeals the trial court's order granting a new trial after the jury rendered a verdict in her favor on Melissa Egenreither's ("Plaintiff") claim for personal injuries sustained when she was bitten by Defendant's dog. We affirm.

Plaintiff, then thirteen years old, was walking home through the alley behind Defendant's home in the City of St. Louis. Plaintiff saw Defendant's son come out of the back yard into the alley through a gate in the chain link fence. Defendant's dog, Neno, a mixed breed of German Shepherd and Rotweiller, came through the gate shortly thereafter. When Plaintiff was five or six feet away from the gate, the dog jumped up and bit her on the arm. It is undisputed that Defendant was the owner of the dog at the time of the incident and that the dog was not on a leash.

Plaintiff submitted her case on the theory that Defendant was in violation of section 10.04.220 of the revised code of the City of St. Louis and that such violation constituted negligence per se. The ordinance provides:

**Leashing of Dogs.**

No owner of any dog shall permit such dog to be found at large on the streets of the City of St. Louis or in any public place or on another person's private property, unless such dog is on a leash, not longer than six feet in length and held by or under control of a responsible person so as to effectively prevent it from biting any person or animal. All dogs are prohibited from running or being at large unless under restraint as described above.

Plaintiff's verdict director, as instruction number 5, provided:

Your verdict must be for plaintiff, Melissa Egenreither, and against defendant, Sandra Carter, if you believe:

First, that Sandra Carter owned the dog in question, and

Second, that the dog owned by Sandra Carter was on property other than that owned by defendant, and

Third, that the dog owned by Sandra Carter was not restrained by a competent person, and

Fourth, as a direct result of such conduct, plaintiff, Melissa Egenreither, sustained damage.

Over Plaintiff's timely objection, the trial court also gave instruction number 6, tendered by Defendant, which provided:

Your verdict must be for defendant if you believe that Neno was at large on the streets of the City, or in any public place while not on a leash but defendant was not thereby negligent.[1]

After the jury returned a verdict in Defendant's favor, Plaintiff timely filed her motion for a new trial claiming, *inter alia,* that Defendant's converse instruction was improper under the circumstances and was a misstatement of the law. The trial court agreed and sustained Plaintiff's motion for a new trial. Defendant appeals, claiming her converse instruction correctly stated the law and that, even if the instruction was erroneous, Plaintiff failed to make a submissible case. We disagree.

We will first address Defendant's claim that Plaintiff failed to make a submissible case. Defendant claims Plaintiff failed to show that Defendant "permitted" the dog to be at large while not on a leash because the undisputed evidence shows she was not at home when the dog escaped from her yard after her child opened the gate. Defendant urges that the requirement that an owner not "permit" the dog to run loose implies that the owner must have knowledge or affirmatively consent to the dog running loose. We disagree.

The term "permit" means "to give permission; to authorize; to allow by silent consent, or by not prohibiting . . ." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1336 (2d ed.1983). It is in the latter sense that the term is used in the ordinance at issue. The ordinance is not concerned with the owner's knowledge of

the violation. Rather, the ordinance imposes upon a dog owner the affirmative obligation to ensure that the dog either remains in the yard or is restrained on a leash under the control of a responsible person "so as to effectively prevent [the dog] from biting any person or animal." Defendant relies on *Monteer v. Prospectors Lounge Inc.,* 821 S.W.2d 898, 900 (Mo.App.1992) and cases from other jurisdictions for the proposition that there must be a showing of some element of knowledge, consent or fault to make out a violation of a leash law. *See, e.g., City of Champaign v. Auler,* 110 Ill.App.3d 243, 66 Ill.Dec. 58, 442 N.E.2d 330, 332 (1982); *Lange v. Minton,* 303 Or. 484, 738 P.2d 576, 577 (1987). *Monteer* is readily distinguishable. In *Monteer,* the plaintiff sought to hold a bar owner liable on a theory of negligence per se for violating an ordinance providing that no liquor licensee or employee shall "allow" disorderliness or brawls upon the premises. The plaintiff, whose husband was murdered in the parking lot of a bar some time after a brawl had been broken up by the bartender, sought to hold the owner liable on a theory of negligence per se for failing to call the police. The court held that the plaintiff had not proven negligence per se because the evidence showed that the bartender had been actively involved in trying to end the fracas and had not acquiesced in the conduct. 821 S.W.2d at 900–01.

*Monteer* is distinguishable on two grounds. First, unlike the ordinance in this case, the ordinance did not establish an affirmative obligation to prevent brawls; the licensee's obligation was to promptly attempt to stop them if they occurred. More importantly, the ordinance in *Monteer* dealt with what was required of licensees in response to the actions taken by third parties not under the licensee's immediate control. In contrast, a leash law addresses what is required of dog owners with respect to an instrumentality they are affirmatively re-

---

1. Instruction number 7 defined "negligence" in accordance with MAI 11.02.

quired to keep under control. Violation of the liquor license ordinance thus requires some sort of knowledge or acquiescence; violation of a leash law does not.

We also find the authorities from other states unpersuasive. Our review of Missouri cases persuades us that Missouri courts have never required a showing of the owner's knowledge or acquiescence to make out a claim of negligence per se for violation of a leash law. *Shobe v. Borders,* 539 S.W.2d 330, 332 (Mo.App.1976); *Jensen v. Feely,* 691 S.W.2d 926, 929 (Mo.App. 1985). Point denied.

■■■ We now turn to Defendant's contention that the trial court erred in granting a new trial because her converse instruction was supported by the evidence and in proper form as reflected in MAI 33.05(2). In reviewing a trial court's award of a new trial because of an erroneous instruction, we determine if the instruction is erroneous as a matter of law upon the record presented, not as a matter within the discretion of the trial court. *State ex rel. Missouri Highway and Transp. Com'n v. Mertz,* 778 S.W.2d 366, 368 (Mo.App.1989). If the instruction is found to be erroneous, we defer to the discretion of the trial court, absent a showing of an abuse of this discretion, because the trial court has the best opportunity to determine the effect of any error. *Whiting v. United Farm Agency, Inc.,* 628 S.W.2d 407, 409 (Mo.App.1982).

Defendant relies on *Wilson v. Shumate,* 296 S.W.2d 72, 75 (Mo.1956), *MacArthur v. Gendron,* 312 S.W.2d 146, 150 (Mo.App. 1958) and *Bentley v. Crews,* 630 S.W.2d 99, 105 (Mo.App.1981), for the proposition that the courts have always allowed defendants in negligence per se cases to explain the reasons for noncompliance with the statute and to hypothesize that explanation for the jury in a converse instruction. Defendant urges that her explanation that she was not at home and the absence of any evi-

dence that the dog had previously escaped the yard justified submission of her converse instruction patterned after MAI 33.05(2).[2] We find that Defendant's authorities do not support her sweeping generalization.

■■■ As cautioned in the Notes on Use No. 1 following MAI 33.05(2), a defendant is only entitled to submit this type of converse instruction if the plaintiff submits on negligence per se "and only if it is supported by the evidence and the facts show that legal justification or excuse is applicable." In other words, a defendant is not entitled to submit a converse instruction patterned on MAI 33.05(2) regardless of the nature of her explanation for failing to conform to the statute, only if the explanation constitutes a legal justification or excuse. In general, legal justification or excuse requires proof of circumstances beyond the defendant's control and not the result of the defendant's negligence which justify or excuse strict compliance with the statute.

■■■ The cases relied upon by Defendant are consistent with this view. In *Wilson v. Shumate,* for example, the plaintiff sought to hold the defendant liable on a theory of negligence per se for violation of an ordinance requiring all motor vehicles to have two sets of adequate brakes in good working order. 296 S.W.2d at 75. The plaintiff sustained injuries when the foot brake failed. *Id.* at 74–75. The court acknowledged that the plaintiff made a submissible case of negligence per se but noted that the defendant was entitled to offer proof of legal excuse or avoidance for his failure to have observed a duty created by the statute which the court defined as "proof that an occurrence wholly without his fault made compliance with the statute impossible at the moment complained of and which proper care on his part would not have avoided." *Id.* at 75. Upon sub-

---

2. *Defendant's converse instruction tracked the overall form of MAI 33.05(2) but erroneously omitted the affirmative defense tail re-* quired by the caution in the Notes on Use. Plaintiff did not object to the form of the instruction.

mission of such proof, the defendant would be entitled to have the jury determine if he was negligent in failing to comply with the statute.[3] *Id.*

Likewise in *MacArthur v. Gendron,* the court observed that considerations of safety, emergency conditions, or impossibility of compliance may constitute valid excuses for noncompliance with a statute. 312 S.W.2d at 150 (citing *Lix v. Gastian* 261 S.W.2d 497 (Mo.App.1953)); *Lewis v. Zagata,* 350 Mo. 446, 166 S.W.2d 541 (Mo. 1942); and *Politte v. Miller,* 301 S.W.2d 839 (Mo.App.1957). *Cowell v. Thompson* similarly recognized that proof that the defendant's actions were undertaken in response to an emergency may justify submission of an instruction hypothesizing justification or excuse. 713 S.W.2d 52, 54 (Mo.App.1986).

■ In the instant case, Defendant's explanation for her failure to conform to the statute did not constitute a legal justification or excuse that the law will recognize as a defense. The fact that Defendant was not at home when the incident occurred did not relieve her of her affirmative obligation imposed by the statute to ensure that the dog either remained in her yard or was restrained on a leash by a responsible person so as to prevent it from biting anyone. Compliance with the ordinance was not rendered impossible by any circumstance beyond Defendant's control. Indeed, the evidence showed that Defendant had a dog pen that could have been used to restrain the dog when necessary to open the gate. Because Defendant's explanation did not constitute a legal justification or excuse, it follows that the trial court did not err in granting Plaintiff's motion for a new trial.

Affirmed and remanded for a new trial consistent with this opinion.

MARY RHODES RUSSELL, C.J., Concurs.

ROBERT E. CRIST, Sr. J., Concurs.

---

3. Although we resolve this case on the basis that Defendant's evidence did not establish a legal justification or excuse to support the submission of an instruction patterned after MAI 33.05(2), we note that the pattern instruction itself may not properly present the issue to the jury. Although the Notes on Use permit defendant to submit a converse upon offering evidence of a legal justification or excuse, MAI 33.05(2) as drafted does not require that the jury find that the facts constituting the legal justification or excuse actually exist – *i.e.,* that the defendant was responding to an emergency, circumstances rendered compliance impossible, compliance would have increased the danger, etc. As drafted, MAI 33.05(2) merely requires the jury to find the defendant exercised ordinary care or the highest degree of care. Where the statute or ordinance imposes an affirmative duty beyond ordinary care, as the statute does in this case, submission of legal justification in the form suggested in MAI 33.05(2) would appear to impermissibly substitute ordinary care for the standard of care established by the legislature. Moreover, under *Wilson,* the defendant must establish *both* circumstances beyond her control *and* freedom from negligence. MAI 33.05(2) only submits the latter.