Argued and submitted February 11, affirmed June 23, 1980

KATHREN,
*Appellant,*
*v.*
OLENIK, et al,
*Respondents.*

(No. 7608-11301, CA 10345)

613 P2d 69

Richard Haeder, Portland, argued the cause and filed the brief for appellant.

Elizabeth K. Reeve, Portland, argued the cause for respondents. With her on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and Mark H. Wagner, Portland.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

RICHARDSON, J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## RICHARDSON, J.

Plaintiff, through her guardian ad litem, seeks recovery for personal injuries sustained when she was bitten by defendants' dog. The trial court granted defendants' motion for involuntary nonsuit on the ground that there was no evidence of defendants' knowledge of their dog's propensity to bite. Plaintiff appeals the judgment, asserting that there was sufficient evidence to submit three issues to the jury: (1) strict liability in tort for owning and possessing a vicious animal; (2) negligence for failure to confine or control the dog; and (3) negligence *per se* for violating the Washington County dog control ordinance. We affirm.

We view the evidence and the inferences to be drawn therefrom in the light most favorable to plaintiff. *Westberry v. Blackwell,* 282 Or 129, 131, 577 P2d 75 (1978).

Paul and John Olenik (defendants) are father and son, respectively. John, the son, owns an eight year old mixed breed dog named Mordecai. The dog is predominantly Saint Bernard and weighs 150 pounds. John's father, Paul, began caring for and keeping Mordecai in June or July, 1975. Plaintiff, age eight, lived next-door to Paul and was bitten by Mordecai on August 23, 1975.

Paul, who lived alone, customarily left Mordecai in his yard during the day while he was at work. A chicken wire fence separated plaintiff's yard from Paul's; however, it was often down because plaintiff and other children would lie on it to play with Paul's two Sheltie dogs and to pet Mordecai. Paul testified that he "roped up" the fence whenever it was down. Although Paul testified that Mordecai was not known to attempt to leave the yard, plaintiff's father testified that he specifically recalled seeing Mordecai out of the yard three times, and may have seen him six to twelve times. Plaintiff also saw Mordecai out of the yard on occasion. Neither plaintiff nor her father informed

[715]

Paul of these occurences. Another neighbor also saw Mordecai out of the yard once, but did not inform Paul. Paul conceded that his back-yard gate might have been left open on occasion, but said he could not recall ever having found it open.

On August 13, 1975, a neighborhood girl was walking her dog when it jumped at Paul's back-yard gate. Mordecai was standing behind the gate and bit the dog on its paw. Paul was not informed of this incident prior to August 23, 1975. On August 23rd, plaintiff and her five year old brother found Mordecai out of the yard and began walking him home. Plaintiff was leading Mordecai by the collar when her brother pulled Mordecai's tail, whereupon Mordecai growled and knocked plaintiff to the ground, biting her in the face. Plaintiff suffered severe facial lacerations requiring stitches and plastic surgery.

The next day a dog control officer visited Paul's residence while Paul was out. Mordecai was chained in the yard and seemed passive. The officer approached slowly, allowing Mordecai to sniff his hands. When the officer knelt down to examine Mordecai's tags, however, Mordecai attacked him and bit him on the face and on both forearms.

Paul testified that prior to the incident of August 23rd he had neither seen, nor been informed of, any vicious behavior by Mordecai and had no indication that he had a dangerous disposition. In response to a hypothetical question, plaintiff's expert opined that a dog behaving like Mordecai was vicious, and had probably been vicious for a minimum of three to five months. The expert's conclusion that the dog would have been vicious for several months was based on her opinion that in general a dog's basic temperament changes slowly.

We first discuss plaintiff's allegation that defendants are strictly liable for plaintiff's injuries. The general rule is that the owner of a dog is strictly liable

for injuries caused by the dog only if the owner knows or has reason to know of the animal's dangerous propensities. *Westberry v. Blackwell, supra; Chance v. Ringling Bros.,* 257 Or 319, 478 P2d 613 (1970). The court in *Westberry* referred to the formulation of this rule in the Restatement (Second) of Torts, § 509:

> "(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.
>
> "(2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know."

If there was evidence that prior to plaintiff's injuries defendants knew or had reason to know of Mordecai's dangerous propensities to bite, then the issue should have been submitted to the jury.

The knowledge necessary to constitute notice of an animal's dangerous propensity varies. *Westberry v. Blackwell, supra,* 282 Or at 132. The question is whether in the particular case the owner saw or heard enough to put a person of ordinary prudence on notice that his animal may have a propensity toward the behavior which would result in the type of injury inflicted. Stated differently, would what was known by the owner have caused a reasonable person to anticipate the kind of behavior which resulted in the injury which occurred?

Paul testified that he had no inkling of Mordecai's vicious propensity. Plaintiff's father testified that John once used the words "guard dog" when discussing Mordecai, but he could not specifically recall anything else from the conversation. Even assuming that a jury could have concluded from this testimony that Mordecai was a guard dog,[1] this fact alone is not evidence

---

[1] Plaintiff's expert testified that the term "guard dog" often means different things to lay people.

that he was vicious or that defendants should have known he had a propensity for viciousness. *Borden v. City of Salem,* 249 Or 39, 43, 436 P2d 734 (1968).[2]

Plaintiff argues the opinion of the expert that Mordecai was vicious and would have been vicious for several months is sufficient to allow the jury to find that defendants should have known of the dog's temperment. That opinion may have been evidence that the dog was in fact vicious, but it is not evidence that the defendants actually knew of the propensity or were aware of any manifestations of viciousness that would put them on notice. The burden was on plaintiff to prove the dog was vicious and that defendants knew of the dog's propensity. *Borden v. City of Salem, supra.* Plaintiff has not met that burden and the nonsuit on the count for strict liability was properly granted.

We next examine plaintiff's claim that defendants were negligent in failing to prevent their dog from biting plaintiff. In *Westberry v. Blackwell, supra,* the Supreme Court discussed the liability of a dog owner for injuries when the dog bit plaintiff. Plaintiff, accompanied by her young son and daughter, visited defendants' home. As plaintiff went toward defendants' home defendants' dog gave her a superficial bite on the hand. During the visit, plaintiff's son ran into the house and complained that the dog had tried to bite him. When plaintiff attempted to walk past the dog on the way to her car, the dog attacked her and severly bit her on the hand. Plaintiff sought damages on the theories of strict liability and negligence. She appealed from a judgment of involuntary nonsuit on both causes of action.

The court, after reciting the general rule imposing strict liability for injuries by domestic animals, con-

[2] Although the claim in *Borden v. City of Salem,* 249 Or 39, 436 P2d 734 (1968), was based on strict liability for maintenance of a nuisance instead of strict liability in tort, the relevant test is the same: Did the defendant harbor a vicious animal which he knew or had reason to know was vicious? 249 Or at 42.

cluded there was sufficient evidence to present that theory to the jury. Respecting the second cause of action, the court held that failure to confine or control a dog can give rise to a cause of action in negligence. The court cited the Restatement (Second) of Torts, § 518, as a proper statement of the rule:

> "Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
>
> "(a) he intentionally causes the animal to do the harm, or
>
> "(b) he is negligent in failing to prevent the harm."

In applying this rule the court said:

> "Here, the evidence indicates that Mrs. Blackwell could have controlled or confined the dog when she knew plaintiff was leaving the premises. She knew the dog had bitten plaintiff on her way into the house. Whether a reasonable person in the exercise of ordinary care would have restrained the dog is properly a question for the jury." 282 Or at 133.

We do not read the opinion in *Westberry* as imposing a duty on a dog owner to control or confine the animal absent knowledge or a basis for knowledge by the owner that the dog will behave in a potentially injurious manner. Negligence, in terms of an omission to confine or control an animal, is based on a duty to take reasonable precautions to prevent a foreseeable risk of injury by the animal. Negligent failure to control or confine a dog must be analyzed in terms of the knowledge on the part of the owner that the dog will cause the injury actually incurred by plaintiff if it is not controlled or confined.

The comments to the Restatement (Second) of Torts, § 518, give some insight into the proper application of the rule set forth in that section. Comment g. states:

"In determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics. * * *"

The comments also indicate that a keeper of a normally docile animal is charged with the knowledge that under particular circumstances the animal is likely to be dangerous. For example, a normally docile female dog is likely to attack other dogs or humans while caring for her young. As these comments indicate, the duty to confine or control the animal is imposed in the context of the general knowledge with which a keeper is charged concerning the characteristics of that class of animal in general or that under certain circumstances they may cause harm.

Dogs have traditionally been considered companions and friends of man and have peacefully co-existed with man for hundreds of years. Dogs as a class are not known to attack human beings. In fact the contrary is considered a characteristic of dogs as a class. Defendants in this case are not charged with any general knowlege that dogs will bite human beings and thus it is not foreseeable that a dog, if not confined or adequately controlled will cause injury by biting. As indicated in our discussion of strict liability, the defendants had no knowledge or basis to know of Mordecai's dangerous propensities. There is therefore no basis in the evidence or the general knowledge concerning the characteristics of dogs to impose a common law duty on the defendants to confine or control their dog. The judgment of nonsuit on the theory of negligence was properly granted.

We turn to plaintiff's claim that defendants were negligent *per se* because they violated the Washington County Dog Control Ordinance, by owning a dangerous or vicious dog, by failing to prevent the dog from running at large and by failing to prevent the dog from being a public nuisance.

Washington County Ordinance No. 138 provides, in relevant part:

" * * * * *

"*SECTION 2. DEFINITIONS.*

"A.   As used in this ordinance, unless the context requires otherwise:

" * * * * *

"7.   'DANGEROUS DOG' means any dog that has, due to the lack of the exercise of proper and adequate supervision and control by its owner, demonstrated a propensity to do an act harmful in its character, to human beings or animals, regardless of whether done in a playful or hostile manner.

" * * * * *

"12.   'DOG RUNNING AT LARGE' means a dog off or outside the premises of the owner, not restrained by a rope, line, leash, chain, or other similar means, or not under the immediate control, restraint, or command of an owner thereof. If a dog is not restrained by a tether of some kind, is not at heel or not a working dog in the field, that dog shall be deemed 'at large.'

" * * * * *

"16.   'VICIOUS DOG' means any dog that has, due to its size, nature or other characteristics, demonstrated a disposition or propensity to do an unreasonable act harmful in its character to human beings or animals, done in a hostile manner.

" * * * * *

"*SECTION 4. PROHIBITED ACTIVITIES.*

"A.   It shall be unlawful for any person:

" * * * * *

"2.   To be the owner of a dog which he fails to prevent from running at large.

"3.   To be the owner of a dangerous dog.

"4.   To be the owner of a vicious dog.

"5.   To be the owner of a dog which he fails to prevent from being a public nuisance by:

" * * * * *

"b.   Biting a person or animal;

" * * * * *."

Plaintiff argues there was evidence that the dog was dangerous or vicious and owning such a dog in violation of the statute is negligence *per se* subjecting defendants to liability for plaintiff's injuries. Sections 4(A)(3) and (4) of the ordinance proscribes ownership of a dangerous or vicious dog defined as one that has "demonstrated a propensity" to do described harmful acts. A dog cannot have demonstrated a propensity unless its behavior has been observed or is observable. Consequently, a dog owner is not in violation of these sections of the ordinance unless the dog has demonstrated to the owner the dangerous or vicious propensities. This, in essence, is the same criterion for common law strict libaility, i.e., that the owner is strictly liable for injuries only if he knows or should have known of the animal's dangerous propensities. As indicated earlier in this opinion, there was no evidence from which the jury could have found the requisite knowledge on the part of defendants.

Plaintiff also argues that defendants violated section 4(A)(5)(b) of the ordinance by owning a dog which they "fail[ed] to prevent from being a public nuisance by: * * * (b) Biting a person * * *." In *Parker v. Reter,* 234 Or 544, 383 P2d 93 (1963), the Supreme Court construed an analogous statute. The statute, ORS 607.045(1), provided that no owner of livestock "shall permit the animal to run at large." Plaintiff was injured when his automobile struck livestock owned by defendant which were on the roadway. The trial court instructed the jury that the statutory duty not to permit an animal to run at large imposes a duty on the owner of such animal and the fact it was running at large is negligence as a matter of law. The court focused upon the words in the statute, "shall permit" and concluded that the statute was not violated unless the owner was at fault in permitting the animals to run at large. The court held the word "permit" implies knowlege, consent or willingness on the part of the owner that the animals run at large or such negligent

conduct as is equivalent. The court held the instruction treating a violation of the statute as negligence *per se* was erroneous.

Applying those principles to the Washington County Ordinance, section 4(A)(5)(b), we conclude a dog owner is not in violation of the ordinance simply by the fact that his dog bit a person. The words "fails to prevent" imply fault in terms of intentional or negligent conduct. This in turn implies a requirement that the owner have knowledge of a risk the dog will bite before the duty to prevent the bite is imposed. If the owner knows or should have known the dog will bite a person he is charged with a duty to prevent the biting. Because we have concluded there was no evidence from which the jury could find that defendants had such knowledge, there is no basis for a finding that defendants violated this section of the ordinance.

In addition plaintiff contends defendants are negligent *per se* by allowing the dog to run at large. The analysis utilized in *Parker v. Reter, supra,* is applicable in construing the section of the ordinance. Failing to prevent a dog from running at large, section 4(A)(2), implies fault on the part of the owner. It is not sufficient for violation of this section that the dog in fact was at large.

Negligence *per se* for violation of a statute or ordinance is a shorthand formulation for the concept that the enactment sets a standard of conduct defining the reasonable man standard of common law negligence. The enacted standard of conduct is designed to prevent injury that it is reasonably foreseeable would result from failure to meet the statutory duty. In *Smith v. Portland Traction Co.,* 226 Or 221, 359 P2d 899 (1961), the Supreme Court set forth the conditions under which a violation of an ordinance will establish liability as negligence *per se;* the violation must be the cause of the injury, the plaintiff must be within the class of persons intended to be protected by the legis-

lation and the injury must be within the area of risk intended to be avoided by the ordinance.

Assuming there was sufficient evidence for the jury to determine that the defendants were at fault for failing to prevent the dog from running at large, the question remains whether injury from a dog bite is within the area of risk intended to be avoided by the running at large provision. We conclude it is not.

Other portions of the ordinance address the problem of injury from dangerous or vicious dogs. As we have construed those provisions, an owner is liable only if the dog has demonstrated dangerous or vicious propensities. Likewise, a dog owner who fails to prevent the dog from becoming a nuisance by biting a person is liable only if he knows or has reason to know of a risk that the dog will bite. The implication of the ordinance as a whole is that the dog owner has a duty to prevent injury by biting only if he knew or could have known the dog had a propensity to bite. This evinces concurrence with the general knowledge that dogs as a class of animal do not normally attack human beings. Because it is not reasonably foreseeable that dogs will attack persons, injury from dog bites is not within the area of risk the running at large provision was designed to avoid.

It may be, as plaintiff argues, that dog bites can be prevented by confining dogs. But the fact that the running at large provision may incidentally prevent the injury which occurred does not mean it was designed for that purpose.

The evidence did not support submission of the case to the jury on the theory of negligence *per se* for violation of the dog control ordinance.

Affirmed.