Argued and submitted September 24,
reversed and remanded December 15, 1980

MEDLYN,
*Appellant,*
*v.*
ARMSTRONG et al,
*Respondents.*

(No. 78-9-192, CA 15828)

621 P2d 81

Richard O. Thomas, Portland, argued the cause for appellant. With him on the brief was Gaylord, Thomas & Wittmayer, Portland.

Nancy S. Tauman, Oregon City, argued the cause for respondents. With her on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Before Schwab, Chief Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff, through her mother as guardian ad litem, brought this action alleging counts in negligence and strict liability to recover damages for injury sustained when she was bitten by defendants' dog. At the end of plaintiff's case, the trial court granted defendants' motion for a directed verdict. On appeal, plaintiff assigns this ruling as error.[1] We reverse and remand.

We examine the evidence in the light most favorable to plaintiff to determine whether there was sufficient evidence to warrant the submission of the case to the jury. *City of Rogue River v. DeBoer,* 288 Or 485, 488, 605 P2d 619 (1980); *Hemstreet v. Spears,* 282 Or 439, 441, 579 P2d 229 (1978).

On April 4, 1978, Theresa Caulkins asked plaintiff's mother to examine a sick goat owned by defendants. In the company of Theresa Caulkins and her two young children, plaintiff went with her mother to defendants' property. When they arrived there, defendants' dog, Hoover, a large mixed-breed male dog, was loose near the house and was barking vigorously. Delia Armstrong, one of the defendants, came out of the house and, in response to plaintiff's mother's inquiry, assured her that Hoover would not harm anyone. The Medlyns had not previously met defendants and were unacquainted with their dog. Delia Armstrong, having spoken with Theresa Caulkins about Mrs. Medlyn, was, however, aware of the purpose of the visit. The three adults, defendants' daughter and the other three children, proceeded to walk across a footbridge past Hoover's food dish to the goat barn. Defendant Steven Armstrong and Hoover followed shortly thereafter. At the time everyone went into the barn, Hoover was observed by both defendants eating at his food dish near the end of the footbridge closest to the barn entrance. Within a few minutes, the children left the barn to play. Soon thereafter the adults heard plaintiff scream. They ran outside and found

---

[1] Although one of plaintiff's assignments relates to the count in strict liability, we do not consider this assignment, since at trial plaintiff conceded there was no evidence to support liability under that count. Further, due to our resolution of the case we do not address plaintiff's other assignments, which concern evidentiary matters which may not recur on retrial.

her holding her face which was bleeding from serious wounds caused by a dog bite. Hoover was at or within six to eight feet of his food dish. There was no evidence that plaintiff or the other children had harmed Hoover or had otherwise provoked his attack.

■    This case is governed by the principles announced in Restatement (Second) of Torts, § 518 (1965), which states:

> "Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if, (a) he intentionally causes the animal to do the harm, or (b) he is negligent in failing to prevent the harm."

■■    An owner may be found negligent for a failure to control or confine the animal. *Westberry v. Blackwell,* 282 Or 129, 133, 577 P2d 75 (1978); *Kathren v. Olenik,* 46 Or App 713, 719, 613 P2d 69 (1980). Such negligence "is based on a duty to take reasonable precautions to prevent a foreseeable risk of injury by the animal." *Kathren v. Olenik, supra,* 46 Or App at 719. Our analysis centers on whether defendants knew or had reason to know that the dog, if not controlled or confined, might cause the injury incurred by plaintiff. The Comments to Restatement (Second) of Torts, § 518 require the owner to have knowledge of certain characteristics of his animal. Comment g states,

> "In determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics."

Here, the evidence was that Hoover was a mixture of Saint Bernard and either Mastiff or golden Labrador and weighed between 90 and 150 pounds. Defendants were experienced with dogs, but had not attempted to study the particular traits of these breeds. There was no evidence that any combination of these breeds would give rise to dangerous characteristics of which defendants were required to be aware. *See Chance v. Ringling Bros.,* 257 Or 319, 328, 478 P2d 613 (1970)(evidence of general propensity of Boxer dog to be protective and to jump erroneously excluded).

Comment h to Restatement (Second), § 518 adds, however,

> "One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. *He is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.* Thus the keeper of even a gentle bull must take into account the tendencies of bulls as a class to attack moving objects and must exercise greater precautions to keep his bull under complete control if he drives it upon a public highway. So, too, the keeper of an ordinarily gentle bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings." (Emphasis supplied.)

Hoover had never before exhibited threatening behavior toward anyone and had frequently played with young children without incident. It was admitted by both defendants, however, that Hoover displayed particular defensiveness around his food dish. When defendants' goats or chickens would venture too close to the dish, Hoover would bark and chase them for a few steps before resuming his feeding. Hoover spent most of his time chained in several locations on defendants' property, including the area where plaintiff was bitten.

■ Although Hoover was ordinarily gentle, defendants were chargeable with knowing that particular circumstances could cause him to exhibit dangerous propensities. Although Hoover had never before threatened a person, defendants were aware that Hoover became more aggressive when he was eating and that at the time everyone went into the barn, only a few minutes before the attack, Hoover was eating. These facts, combined with their knowledge that Hoover was unacquainted with plaintiff and thus could perceive plaintiff as an intruder, raised a jury question as to whether defendants should have confined Hoover or taken other action to prevent the attack. We hold that the trial court erred in granting defendants' motion for a directed verdict.

Reversed and remanded.