Thomas R. WILLIAMS,
Appellant (Plaintiff),

v.

Daniel L. JOHNSON and Jennifer Johnson, husband and wife,
Appellees (Defendants).

No. 89–31.

Supreme Court of Wyoming.

Oct. 31, 1989.

James H. Barrett, Cheyenne, for appellant.

Julie Nye Tiedeken of McDaniel and Tiedeken, Cheyenne, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant, Thomas Williams, was delivering mail in a Cheyenne neighborhood when he was attacked by two dogs owned by appellees, Daniel and Jennifer Johnson. The dogs attacked appellant while he was

standing on the porch of a house next door to appellees' house. Although the dogs inflicted no direct injury on appellant, they frightened him and he injured his knee in an attempt to avoid the attack. Williams sued to recover compensation for his injury. The trial court entered summary judgment in favor of the Johnsons. Williams now appeals, asserting that the district court erred in its determination that, in order to defeat the summary judgment motion, he must raise an issue of fact concerning Johnsons' knowledge of the dangerous propensities of their dogs.

We affirm.

The only issue raised by appellant is this: "The court below erred in ruling that as a matter of law, appellants must have had notice of the dangerous propensities of their dogs."

Appellant's complaint, filed in June 19, 1987, generally alleged appellees' liability based on the facts outlined above, but omitted reference to any particular theory of recovery. His "Pre-trial Memorandum," however, limited the factual and legal issues which he considered material to appellees' liability to the following:

1. Was appellant attacked by dogs owned by appellee?

2. Was such an attack the proximate cause of his injury?

3. Could appellees be held liable for that injury if they had no notice of the vicious nature of their dogs?

4. Could appellant obtain compensation for injury sustained as a result of a dog attack, during which there was no physical contact by the attacking dogs?

In opposition to the summary judgment motion, appellant argued that he need not prove appellees' knowledge of the vicious propensities of their dogs. That contention was consistent with the position he advanced at the pretrial conference, at which time appellant considered himself entitled to recover upon proof of: (1) injury, (2) proximately caused, (3) by attacking dogs owned by appellees. Appellees' summary judgment motion asserts that because of absence of any knowledge of dangerous propensities, appellees are entitled to judgment as a matter of law. We agree.

This court has recognized three distinct theories of recovery under which appellant could have argued the particular facts of this case. The first is the common law theory of strict liability of an owner who keeps an animal knowing of its dangerous propensities as articulated in *Restatement, Second, Torts* § 509 (1977); *Abelseth v. City of Gillette,* 752 P.2d 430, 433–34 (Wyo.1988). The second is also a common law cause of action, for negligence in the care and control of domestic animals. *Endresen v. Allen,* 574 P.2d 1219, 1221–22 (Wyo.1978). Finally, we have recognized a theory of negligence premised on duties created by state statutes or municipal ordinances which alter the duties imposed by common law by making it unlawful for owners of domestic animals to permit them to run at large. *Id.* at 1222–25; *see also Nylen v. Dayton,* 770 P.2d 1112, 1116 (Wyo.1989).

Under the common law, the owner of a vicious dog, if he had knowledge of a dangerous propensity, was held strictly liable for any harm proximately caused by the animal's vicious behavior. Such liability attached despite the owner's exercise of utmost care to control the animal. *Restatement, Second, Torts* § 509 (1977); *Abelseth,* 752 P.2d at 433–34; *Larsen v. City of Cheyenne,* 626 P.2d 558, 560 (Wyo. 1981). The common law also provided that the owner of an animal which was not vicious or not known to be vicious, but which was prone to some other potentially harmful behavior, could be held liable under a theory of negligence for any injury proximately caused by such behavior. In such cases the owner was only liable if, having knowledge of the particular propensities which created a foreseeable risk of harm, he failed to exercise reasonable care in his control of the animal. Thus, if the owner of a dog knew of its proclivity for leaping fences and chasing cars, he could be held liable for failure to take reasonable measures to confine the animal should it escape from his property and cause an accident. *Restatement, Second, Torts* § 518 (1977); *Endresen,* 574 P.2d at 1221–22.

Common to both of these causes of action are certain facts which must be put in issue to defeat defendant's summary judgment motion, i.e., (1) the owner, (2) of an animal with a propensity for potentially harmful behavior, (3) must know of that propensity, and (4) such behavior must be the proximate cause of injury to the plaintiff. In this case, appellees denied knowledge of harmful propensities. Appellant claimed knowledge of dangerous propensities was unnecessary to a common law cause of action. Appellant therefore failed to assert facts, by affidavit or otherwise, which would place in issue appellees' knowledge of the vicious nature of their dogs. This was fatal to his maintaining a cause of action under these common law theories. His suit was premised on these theories, and the district court, therefore, correctly granted appellees' summary judgment motion.

Appellant's argument on appeal, however, characterizes his suit as one based on appellees' duties under Cheyenne's municipal ordinances. He asserts that these ordinances alter the elements necessary to the common law actions and render appellees liable, despite their lack of knowledge concerning the dangerous propensities of their animals. Appellant bases that argument on our discussion in *Endresen v. Allen*, in which we explained that a dog owner's common law duty may be altered by a municipal ordinance that prohibits owners from permitting animals to run at large. We noted that, while the unconditional prohibition of such an ordinance creates a duty to restrain animals from running at large without reference to the owner's knowledge of their propensities to escape or cause harm, the ordinance does not relieve a plaintiff from the obligation of establishing that a failure to restrain was a result of the owner's negligence. Thus, we rejected the notion that a prima facie case of negligence could result from the mere fact that an animal was at large. *Endresen*, 574 P.2d at 1222–25. *See also Nylen*, 770 P.2d at 1116; *Hinkle v. Siltamaki*, 361 P.2d 37, 40–41 (Wyo.1961).

Appellant presented his claim of a cause of action under the ordinances for the first time on appeal. Parties seeking reversal of a summary judgment may not, on appeal, assert issues or theories of recovery which were not presented to the trial court. This court will not consider such issues or theories unless it is apparent or reasonably discernable from the pleadings, affidavits and exhibits that they were raised below. *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District No. One*, 763 P.2d 843, 848 (Wyo.1988); *Minnehoma Financial Company v. Pauli*, 565 P.2d 835, 838–39 (Wyo. 1977).

We conclude from our examination of the record that appellant never presented the trial court with a theory of recovery grounded in the duty which may have been created by the "running at large" ordinance. Instead, he proceeded solely upon a common law cause of action, arguing merely that the animal control ordinances taken as a whole created a presumption that the Johnsons' dogs were vicious.

Nowhere in his pleadings, affidavits, exhibits, or in his pretrial memorandum does appellant so much as mention any of these city ordinances. Appellees called this fact to the attention of the trial court in a brief supporting their summary judgment motion, which noted:

> "The Plaintiff has not alleged that a state statute or city ordinance posed a duty upon the Defendants and the complaint basically alleges a negligence cause of action.

> "Clearly, the Plaintiff is required to show that the Defendants had knowledge of the dangerous propensities of the animals or they are barred from recovery."

Appellant first mentioned the ordinances in his memorandum in opposition to the summary judgment motion, where he briefly quotes from a number of definitional provisions and the section prohibiting owners from permitting animals to run at large, and then relied upon the provisions to establish that the Johnsons' dogs, running at large, were presumed vicious because of the attack. Appellant summarizes his position with respect to the ordinances by stat-

ing, "It is clear, however, that the Cheyenne Municipal Ordinance has by definition abrogated the Common Law Rule and has created a presumption that an animal is vicious if it engages in an unprovoked attack."

The district court correctly concluded that Cheyenne's animal control ordinances did not provide appellant with presumptive proof that the Johnson's knew of the vicious nature of ·their dogs. The district court correctly determined that, under the common law theory of recovery advanced, appellant was required to present as an issue the fact appellees had knowledge of the dangerous propensities of their dogs. Accordingly, the summary judgment is affirmed.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

In December 1985, two dogs allegedly owned by appellees,[1] being where they should not have been and doing what they should not have done, caused injury to appellant Thomas R. Williams, the local postal carrier, while he was engaged in mail delivery at an adjoining house. Upon return from the grocery store, while unloading her purchases in the garage, appellee Jennifer Johnson released the family's two golden retrievers "from the garage area of the home into the front yard." Appellees had a prior "dogs running at large" city ordinance charge against them.

As the postman was delivering mail at the neighbor's home, he alleges that the dogs "leaped upon the porch" and attacked him, and while in the act of evading the attacking animals, he twisted and seriously injured his knee. This suit followed, claiming recovery for that injury. Appellees were renting and the owner was also originally named as a defendant and subsequently dismissed by stipulation.

Following a course of discovery and submission of pretrial memoranda, the order on pretrial conference vacated a trial setting and found

that another hearing is necessary on Defendants' motion for summary judgment on the issues of whether Plaintiff must show that Defendants were aware of the vicious propensities of their dogs in order to recover in this matter and whether Plaintiff can recover in this matter even though he was not actually bitten by Defendants['] dogs but was just frightened by their dogs, * * *.

Following briefing on both issues, summary judgment was granted to appellees by finding:

1. The Plaintiff does have a cause of action for being frightened by Defendants' dogs and does not have to prove under the law that he was actually bitten during the alleged attack,[2] however, Plaintiff must show that Defendants had knowledge of the dangerous propensities of their dogs;

2. The Defendants did not have knowledge of the dangerous propensities of their dogs;

3. There is no material question of fact to be decided by the trier of fact and Defendants are entitled to Summary Judgment[.]

I would certainly concur with the majority that this case was casually pleaded. See *DeRobertis by DeRobertis v. Randazzo*, 94 N.J. 144, 462 A.2d 1260, 1262 (1983), where it was perceived that an air of casualness permeated the proceedings. But even so, I dissent in concluding that a claim was properly stated which was not suitable for disposition by summary judgment on this record.

This majority correctly recognizes that there are three different legal bases for recovery for dog caused injuries. The first is found in strict liability under Restate-

---

1. Appellees denied their dogs were involved with the postal carrier. A summary judgment motion was determined adverse to appellees by trial court ruling that there was "a material issue of facts" as to the identity of the dogs.

2. The no bite, just frightened inquiry for claimed recovery is not carried forward into appellate review. See Annotation, *Liability of Dog Owner for Injuries Sustained by Person Frightened by Dog,* 30 A.L.R.4th 986 (1984).

ment (Second) of Torts § 509 at 15 (1977), where caused by a dog with known dangerous propensities:

> (1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm.
>
> (2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know.

This is the strict liability claim.

The second basis of recovery is ordinary negligence in failure of maintenance or control within Restatement (Second) of Torts, *supra*, § 518 at 30:

> Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
>
> \*    \*    \*    \*    \*    \*
>
> (b) he is negligent in failing to prevent the harm.

This is the ordinary negligence claim.

The third basis of recovery arises from contended violation of statutory or ordinance prohibitions creating "animals running at large" control requirements. This is the statutory violation claim.

I would also concur with the majority that summary judgment could have been properly granted within the pleading and text of this case if confined to either the first or third theories of recovery. Unfortunately, the majority then intermixes criteria of the strict liability and the violated "dog running at large" ordinance concepts in resolution of the second cause of action, which is ordinary negligence. In this regard, error resulted in trial court decision and is now perpetuated by confusion created by this majority's confirming decision.

Directly stated, neither knowledge of dangerous propensity nor alleged violation of an ordinance is necessarily required to present a negligence claim in maintenance and control cases resulting from dog inflicted injuries. The issue is whether this theory of recovery is negligence in maintenance or release of the animal, proximate cause, and consequent injury with resulting damage, personal or property. The operative claims of appellant's complaint include:

> 5. That on or about December 18, 1985, Defendant Jennifer Johnson arrived at the residence that she and Defendant Daniel L. Johnson were renting at 5017 Windmill Road and released the parties two large dogs from the garage area of the home into the front yard. A short time later Plaintiff was on the front porch of the residence located at 5013 Windmill Road, the home next door, delivering mail when the two animals above-mentioned, leaped upon the porch of 5013 Windmill Road and attacked Plaintiff. While in the act of trying to evade the attacking animals, Plaintiff twisted and seriously injured his knee.
>
> 6. That as a direct and proximate result of the above-mentioned knee injury Plaintiff was admitted to Memorial Hospital of Laramie County and on or about December 19, 1985, he under-went surgery to repair damage to his knee. As a result medical bills were incurred and the possibility of future medical bills from this knee injury exist.
>
> 7. That Plaintiff Thomas R. Williams has as a direct and proximate result of this vicious attack sustained injuries and has had to undergo extreme pain and suffering and will continue to suffer such, mental anguish, emotional distress, loss of wages and medical expense, for all of which Plaintiff should be compensated in the amount of One Hundred Thousand Dollars ($100,000.00).

It is apparent that which theory or all of these three theories were to be contended is less than clearly defined.[3] However, the actual motion for summary judgment filed by appellees recited as a factual basis and issue contention:

---

**3.** I could more nearly agree with the majority if the decision was determined by insufficiency of the pleadings, but this defensive posture was not really asserted.

1. The Plaintiff contends that he was attacked by two large dogs on December 18, 1985 and has alleged that the Defendants are the owners of the dogs in questions [sic].

2. In his deposition, the Plaintiff describes the dogs which attacked him as being "a golden lab and an irish setter."

3. The Defendants, Daniel L. Johnson and Jennifer Johnson, are the owners of two dogs which are golden retrievers. The Defendants moved from the neighborhood in question on January 28, 1986 and since that time, neighbors of the Johnsons who reside in close proximity where the incident in question occurred, have noticed that there is a yellow lab and irish setter which run loose in that neighborhood.

4. There is no question that the dogs in question were not owned by the Defendants and that they should be dismissed from this suit.

Appellees moved for summary judgment on mistaken identity and only later did appellant first raise, in pretrial memorandum, issues which should be briefed before trial: [4]

### SPECIAL ISSUES

Special issues that should be briefed and argued prior to Trial are as follows:

1. Need the Johnsons have had notice of the vicious nature of their dogs in order to incur liability?

2. Is a dog attack that produces injury without contact subject to compensation?

The trial court in response by pretrial conference order vacated the trial date and further stated:

[I]t further appearing that another hearing is necessary on Defendants' motion for summary judgment on the issues of whether Plaintiff must show that Defendants were aware of the vicious propensities of their dogs in order to recover in this matter and whether Plaintiff can recover in this matter even though he was not actually bitten by Defendants['] dogs but was just frightened by their dogs, * * *.

Appellees argued as dispository in their following brief:

With regard to an animal not naturally vicious, the general rule, in the absence of a statute, is that the owner of the animal is not answerable for injuries done by it unless it was in fact and to the owner's knowledge, vicious or dangerous.

In response, appellant argued that under the Cheyenne city ordinance, which he quoted, proscribing defendants' conduct:

"7–8. <u>RUNNING AT LARGE PROHIBITED.</u> It shall be unlawful for any owner to allow or permit any animal ... to be at large as defined in 7–1 upon the streets, alleys, sidewalks, public grounds or private property, other than property owned or occupied by the owner and not normally frequented by the general public ... If an animal is found to be at large within the meaning of this article, the owner shall be *presumed* to have violated this article ..." [Emphasis in original.]

Unfortunately, appellant's trial brief did not clarify claimed theories of recovery by definition and factual attribution. Similarly, and also unfortunately, we do not now clarify in this appeal that the requirement of knowledge of propensity is confined to a strict liability basis for asserted recovery. Likewise, the necessity of pleading the violation of the ordinance relating to the dogs running at large is specifically confined to that theory of recovery which admittedly was not pleaded for presentation by the appellant. See W.R.C.P. 9(i). The ordinance violation claim was argued on appeal, but neither pleaded nor argued before

---

4. Attached to the pretrial memorandum were copies of the City of Cheyenne dog ordinance violations which included a November 20, 1985 complaint against one of the two golden retrievers owned by appellees; namely Bo, along with a number of other citations for which relevancy is somewhat unclear. Also attached were the medical bills, which define the scope of injury, totaling over $2,800.

the trial court.[5]

An interesting argument could have been made in trial court to be reviewed here that summary judgment might have been proper lacking *any actual evidence of negligence.* That theory of defense was not presented and like the ordinance violation claim, should not now be made the subject of this decision. May it suffice to say on this record that at least one prior running at large ordinance violation problem had existed. Then later, from what is admitted, these dogs were released from the garage to the apparently unfenced front yard. The issues of whether that release constituted negligence under the circumstances and the constraint of known ordinance limitations should have at least been argued if not submitted for jury resolution.

Prior Wyoming cases are consistent with the view I take including the principal case of *Endresen v. Allen,* 574 P.2d 1219 (Wyo. 1978). *Endresen* involved a dog with a proclivity to escape from the yard and chase motor vehicles up and down the street. In that case, these characteristics resulted in an injured motorcyclist who sued for his resulting injuries by advancing theories for recovery of both negligence and a violation of the duty under the city ordinance to keep the dogs out of the public street.

The decision in *Endresen* made clear the violent propensity of the dogs was not a concern since the theory for recovery was negligence, not strict liability. A further significant subject of the discussion was the third theory of recovery, violation of an ordinance and its attributes as evidence of negligence or negligence per se. The court observed as dispository for a negligent claim:

> We think that there was sufficient evidence of negligence to justify submission

to the finder of the facts the question whether defendants should reasonably have anticipated that injury would result from their failure properly to secure the dog and whether they negligently failed properly to secure the dog.[6]

*Id.* at 1222.

*Larsen v. City of Cheyenne,* 626 P.2d 558 (Wyo.1981), if relevant at all, is considered an ordinance attribution claim. Actually controverted was the duty of the city pound under city ordinance for any release of impounded dogs. *Abelseth v. City of Gillette,* 752 P.2d 430 (Wyo.1988) to the contrary, was a strict liability case raising the effect of a strict liability theory on the Wyoming Tort Claims Act. *McCarthy v. Croker,* 549 P.2d 323 (Wyo.1976) was pleaded as a propensity case for which the required scienter was found lacking to escape a motion to dismiss at the close of plaintiff's evidence. *McCarthy* did not present a running at large issue since the dog was at home and the case was not pleaded in a negligence concept; thus, not factually comparable.

This thrice faceted recovery in dog injury cases is identified by a course of cases from other jurisdictions. The appellate issues presented in *Westberry v. Blackwell,* 282 Or. 129, 577 P.2d 75 (1978) involved sufficiency of the evidence on two charges, strict liability or negligence. The dog accorded a superficial bite on the hand to plaintiff on her way into the defendant's house and then the victim, comforted with the owner's assurance of docility, was discouraged with a severe bite when she departed. That court found evidence upon which the strict liability propensity case could have been presented to the jury, and then by reference to Restatement (Second) of Torts, *supra,* § 518, also found a trial

---

**5.** What appellant did argue in memorandum to the trial court was that the scienter requirement of strict liability had been "abrogated or modified" by the city ordinance. A presumptive rule of evidence is suggested. The brief now filed on appeal more nearly fits a third category claim founded in ordinance violation as a basis for liability.

**6.** It is apparent that had the ordinance been pleaded in this case, the culpability criteria of *Endresen* for an ordinance violation theory of recovery could have been found in the admitted voluntary release of the dogs to the front yard and uncontrolled as they left the yard, if they did, to go to the adjoining house where appellant was standing.

basis for a negligence claim.[7]

Plaintiff's second cause of action alleged defendants were negligent in failing to confine the dog. Failure to confine or control such a domestic animal can give rise to a cause of action in negligence. * * *

* * * * * *

Here, the evidence indicates that Mrs. Blackwell could have controlled or confined the dog when she knew plaintiff was leaving the premises. She knew the dog had bitten plaintiff on her way into the house. Whether a reasonable person in the exercise of ordinary care would have restrained the dog is properly a question for the jury.

The defendants' motion for a judgment of involuntary nonsuit should not have been granted. Viewing the evidence in the light most favorable to the plaintiff, a legitimate question of fact for the jury was presented, both as to the charge in strict lability and the charge in negligence.

*Westberry*, 577 P.2d at 76–77.

The California court was presented with the ordinance violation case in *Garson v. Juarique*, 99 Cal.App.3d 769, 160 Cal.Rptr. 461 (1979), where a defendant's judgment was reversed in factual review of a dog permitted to sit on the lawn in front of the house which then bolted into the plaintiff as she and her dog passed by. As a key to the case, the *sitting on the lawn* was considered to be *running at large*.

We therefore hold that the trial court erred when it concluded that defendant's dog was not "at large" in violation of the statute during the time that it apparently submitted to its master's command to sit on the lawn. On the contrary, the dog was at large as soon as the defendant brought the dog onto his unenclosed front yard without any physical restraints.

*Id.* 160 Cal.Rptr. at 464.

In *Rickrode v. Wistinghausen*, 128 Mich. App. 240, 340 N.W.2d 83 (1983), it was Maynard the cat that came into the plaintiff's back yard and severely clawed a child. The trial court favored defendant with a directed verdict and the appellate court reversed. That court considered both strict liability and negligence theories of recovery in review. The scienter requirement for strict liability was found from a prior history of events to exist and evidence of non-exercise of ordinary care under the circumstances to contain or restrain required a jury trial for the negligent claim.

We note that, on remand and retrial, the trial court should instruct the jury that negligence on the part of plaintiff Dawn Rickrode, or for that matter any fault, is not at issue if they should find defendant knew that Maynard had violent propensities. * * * Only the defenses of willful provocation or gross negligence by Dawn would preclude recovery. * * * However, should the jury find that defendant lacked the *scienter* necessary for strict liability, i.e., that defendant knew or had reasons to know that Maynard had dangerous propensities, then the jury is to decide whether defendant was negligent in her control of Maynard. When considering whether defendant was negligent, the jury may also consider whether Dawn was negligent or at fault, and if so, apply the doctrine of comparative negligence.

*Id.* 340 N.W.2d at 87 (emphasis in original).

A third case showing exposure in decision to a dog bite injury as comprehensively discussed presents the tale of Pollo in *DeRobertis by DeRobertis*, 94 N.J. 144, 462 A.2d 1260. A significant verdict had been obtained in behalf of the bitten five-year-

---

7. Another rule evidenced in these cases is if the name of the dog is given in the opinion, the decision for defendant dog owner is more likely, e.g., Gideon in *Slack v. Villari*, 59 Md.App. 462, 476 A.2d 227, *cert. denied* 301 Md. 177, 482 A.2d 502 (1984); Rowdy in *Newport v. Moran*, 80 Or.App. 71, 721 P.2d 465 (1986); and Morde-

cai in *Kathren v. Olenik*, 46 Or.App. 713, 613 P.2d 69 (1980). Compare the female doberman called Tyke in *Garson v. Juarique*, 99 Cal.App.3d 769, 160 Cal.Rptr. 461 (1979). We only know that one of the animals in this case was named Bo.

old child and the case was reversed and remanded for retrial on the contested issue of the child's trespass to the location where Pollo was chained. Answering both theories of strict liability and negligence, the New Jersey Supreme Court wrote:

> In summary, to recover under [the New Jersey statute], a plaintiff must prove that the defendant owned the dog, that the dog bit the plaintiff, and that the plaintiff was in a public place or lawfully on the owner's property. If a plaintiff is unable to recover under the statute for failure to prove any of these three elements, he still may have a cause of action based on common-law principles. If a plaintiff proves scienter, a dog-owner is absolutely liable for injuries caused by the dangerous characteristic of the dog, unless the owner can prove that the plaintiff was contributorily negligent. In that event, the determination of liability is governed by the Comparative Negligence Act. * * * If, on the other hand, the plaintiff is unable to prove that the owner knew or should have known of the dog's dangerous characteristics, then the owner is liable only if the plaintiff is able to prove that the owner acted negligently in keeping the dog. Once again, the negligence of the plaintiff would be relevant to determining the liability of the owner. Finally, the owner of an abnormally dangerous dog owes a duty of ordinary care to an infant trespasser.

*Id.* 462 A.2d at 1267.[8]

The court concluded that the owner with scienter is subject to absolute liability as the majority rule in other jurisdictions and further noted:

> If either the dog is not vicious or the owner does not know of its vicious propensities, then negligence, not absolute liability, applies. Because absolute liability is premised on the notion that a greater responsibility is owed to the public by those who knowingly harbor dangerous animals, the rationale for absolute liabili-

ty disappears in the absence of scienter.[9]

*Id.* at 1266.

Similar cases of current review include *Slack v. Villari*, 59 Md.App. 462, 476 A.2d 227, *cert. denied* 301 Md. 177, 482 A.2d 502 (1984), where Gideon, in an isolated incident, snarled from the yard, but did not bite the plaintiff, causing her to catch her heel and twist her back without falling. This case provided no basis for liability in either strict liability or negligence. In *Kathren v. Olenik*, 46 Or.App. 713, 613 P.2d 69 (1980), Mordecai bit one of the children who was bringing him home in a circumstance where there was no testimony of prior occurrences of a vicious propensity nature. The case presented an ordinance violation, a Restatement (Second) of Torts, *supra*, § 509 claim in strict liability, and a negligence charge under Restatement (Second) of Torts, *supra*, § 518. That court ruled in favor of Mordecai and his owner on all three claims. Negligence and strict liability were also raised in another Oregon case, *Medlyn v. Armstrong*, 49 Or.App. 829, 621 P.2d 81 (1980), discerning that Hoover was more aggressive when he was eating, and as a mixture of St. Bernard and either Mastiff or golden labrador, raised a jury question whether the dog should have been confined or the owner should have taken other action to prevent the attack on the small child. Compare *Newport v. Moran*, 80 Or.App. 71, 721 P.2d 465 (1986) when Rowdy ran into plaintiff and the court perceived that it was unforeseen for the dog to "charge and knock someone down, causing an injury." *Id.* 721 P.2d at 466.

> Reviewing the evidence in the light most favorable to plaintiff, we find no evidence that would put defendant on notice that Rowdy had a potentially dangerous propensity to run into people. Dogs, as a class, are not considered dangerous to humans, and defendant is not

---

8. The cited New Jersey statute imposes absolute liability for a person "lawfully" on the premises which became the issue for reversal because of a faulty instruction.

9. Absolute liability and strict liability are applied as synonymous terms in these dog-caused injury cases. *Cf. Abelseth*, 752 P.2d 430, a Wyoming case, with *DeRobertis by DeRobertis*, 462 A.2d 1260.

charged with any general knowledge that dogs will bite—or, in this case, run into—a person. *Kathren v. Olenik, supra,* 46 Or.App. at 720, 613 P.2d 69. In Rowdy's particular case, no evidence was presented that the dog would, or had, ever purposely run into a person. At most, the evidence showed that Rowdy was friendly and playful and that he engaged in rough play with other dogs while near human beings.

*Id.* at 466–67.

The Washington Supreme Court in *Arnold v. Laird,* 94 Wash.2d 867, 621 P.2d 138 (1980) reviewed two theories of recovery under the Restatement of Torts to determine whether the owners of Blanket, the Great Dane, should be held liable for damage to the neighbor's child that climbed on the yard-separating cyclone fence. The court recognized both theories and found that no separate evidence of negligence was presented to justify an instruction on that claim and on the issue of the dog's vicious propensities that the negative jury verdict was dispositive. In a footnote of interest, that court recognized that there could be a difference between vicious propensities and dangerous tendencies, but did not define the difference. What was significant was footnote recognition after litigant failure to properly present the theory of ordinary negligence at any time prior to midtrial processing, that he as plaintiff was foreclosed from its addition for recovery since it afforded defendant no adequate opportunity to defend. *Id.* 621 P.2d at 141 n. 4.

Known propensity of dangerous or vicious characteristics and disposition of the animal as a criteria for strict liability is clearly not applied to the negligence claim where the responsibility of the owner is only tested to exercise suitable custody and control over the animal. In review for the negligence theory, the degree of care of the animal is dependent upon the kind and character of that particular animal, the circumstances in which it is placed and the purposes for which it is employed or kept. 4 Am.Jur.2d *Animals* § 89 at 337 (1962). Here to be found are the pit bull cases

currently receiving significant legislative and litigative attention.

Finding a concept in negligence which could be considered to have been presented in this case, I would find summary judgment improvidently granted and would reverse for trial development and evidentiary decision.