Argued and submitted October 17, 2002, at Lake Oswego, reversed and remanded
October 15, 2003

M. Rodger VAN ZANTEN,
*Appellant,*

*v.*

Dyrk VAN ZANTEN,
*Respondent.*

0101-01108; A116210

78 P3d 100

David R. Nepom argued the cause and filed the briefs for appellant.

R. Daniel Lindahl argued the cause for respondent. With him on the brief was Bullivant Houser Bailey, P. C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

Brewer, J., concurring.

Landau, P. J., dissenting.

## ARMSTRONG, J.

Plaintiff appeals from a judgment dismissing his action for personal injuries that he sustained when defendant's dog ran into him and knocked him to the ground. The trial court granted defendant's motion to dismiss because it concluded that plaintiff had failed to establish a *prima facie* case. ORCP 54 B(2). We review for errors of law and reverse.

We state the facts in the light most favorable to plaintiff, the nonmoving party. Plaintiff is defendant's 79-year-old father. On July 6, 1999, plaintiff was taking a lawn tool to a shop to have it repaired and stopped at defendant's house on the way. Defendant's son greeted plaintiff and said that defendant, who had a mechanic's business that he ran out of a shop on his property, might be able to fix the tool. The shop was located at the end of defendant's driveway, which was fenced in and approximately 20 feet wide and 90 feet long. The driveway also provided access to defendant's backyard, which was near the entrance of the shop. As plaintiff and defendant's son walked down the driveway to the shop, defendant's dog—which was playing with another dog—ran out from the backyard and into plaintiff, knocking him down. Plaintiff sustained numerous injuries, including a broken nose, a chipped tooth, and a broken hip. He subsequently brought this personal injury action against defendant.

At the time of the accident, defendant's dog, a Great Dane, was one and one-half years old and weighed approximately 135 pounds. Defendant testified that he would periodically have a neighbor's dog visit so that it could play with his dog. During those "play dates," the two dogs had unfettered access to the driveway and backyard and would "rac[e] continuously" back and forth between the two areas. It was during one of those play dates that defendant's dog knocked plaintiff down.

After plaintiff presented his case-in-chief at trial, defendant moved to dismiss the action on the ground that plaintiff had failed to establish a *prima facie* case of negligence. According to defendant, plaintiff had failed to show that the dog "had a potentially dangerous propensity to run

into people," and, consequently, plaintiff's injury was not foreseeable. In response, plaintiff argued that he was an invitee on defendant's property because he had entered defendant's premises on a business errand—to have a lawn tool repaired. Defendant therefore had a duty to make his premises reasonably safe for plaintiff, and his failure to restrain the two dogs constituted negligent conduct with respect to that duty.

The trial court agreed with defendant. It concluded that plaintiff held the status of a licensee rather than an invitee at the time of the injury and that, regardless of his status, plaintiff had failed to present any evidence "that would put [defendant] on notice of a potentially dangerous propensity of [his] dog to run into people." It accordingly granted defendant's motion to dismiss.

Plaintiff argues on appeal that the trial court erred in concluding that he was a licensee and not an invitee at the time of the injury because his original intention to visit socially with defendant had changed when defendant's son— who worked with defendant—mentioned that defendant might be able to repair the lawn tool. According to plaintiff, his decision to act on that suggestion changed the nature of the visit from a social to a business visit, thereby transforming his status from licensee to invitee. Plaintiff further asserts that, even if he were a licensee, defendant owed him a duty to exercise reasonable care for his protection. Defendant's knowledge that his "dog was extremely rambunctious when it was with the other dog" and his failure to restrain the two dogs on the day of the injury constituted *prima facie* evidence of a breach of that duty.

Defendant responds that plaintiff's status at the time of the injury has no bearing on the proper resolution of the case. According to defendant, because the case involves a claim that he unreasonably failed to confine or control a domestic animal, his duty was the same regardless of plaintiff's status, and the proper inquiry for determining whether he is liable is "whether [he] had notice of facts that the dogs posed a risk of running into anyone." Defendant posits that, because plaintiff failed to present evidence on that issue, the trial court did not err in dismissing the action.

A person who possesses a domestic animal that the person knows or has reason to know is abnormally dangerous is strictly liable for the harm caused by the animal as a result of its abnormally dangerous characteristics. For all other domestic animals, a person who possesses an animal is liable for harm caused by the animal if the person is negligent in failing to prevent the harm. *E.g.*, *Westberry v. Blackwell*, 282 Or 129, 131-33, 577 P2d 75 (1978). Plaintiff's claim is governed by the latter principle. We explained in *Kathren v. Olenik*, 46 Or App 713, 719, 613 P2d 69 (1980), how the principle works:

> "Negligence, in terms of an omission to confine or control an animal, is based on a duty to take reasonable precautions to prevent a foreseeable risk of injury by the animal. Negligent failure to control or confine a dog must be analyzed in terms of the knowledge on the part of the owner that the dog will cause the injury actually incurred by plaintiff if it is not controlled or confined."

Thus, as defendant correctly points out, plaintiff's status as an invitee or licensee has no bearing on defendant's liability. Instead, the issue is whether plaintiff's injury was foreseeable.

Defendant contends that the facts in this case are similar to those in *Newport v. Moran*, 80 Or App 71, 721 P2d 465, *rev den*, 302 Or 35 (1986). There, the plaintiff was injured by the defendant's dog when the dog ran into her while she was walking back to her house after retrieving her mail. The evidence in that case showed that the defendant's dog was energetic, friendly, and playful, but nothing suggested that the dog might intentionally charge into someone on the street and knock the person down. Because "[n]either [the] defendant nor [the] plaintiff expected that [the dog] would behave as [it] did," we concluded that the injury was not foreseeable and that the defendant therefore was not liable for the plaintiff's injuries.

Here, in contrast, defendant knew that his dog and his neighbor's dog would run rambunctiously back and forth between the backyard and the relatively small, fenced-in area of the driveway when the two dogs were brought together to play, as they were doing on the day of plaintiff's

fall. Defendant also knew that his dog was both large and immature. Taken together, those facts are sufficient to support a finding that it was reasonably foreseeable to defendant that his dog would run into and injure a person who was walking in the fenced-in area while the dogs were running and playing together. It was not necessary for defendant's dog previously to have run into someone while it played with the neighbor's dog in order to make it reasonably foreseeable to defendant that that could happen if the dogs were not controlled.

The dissent contends that *Newport* is factually indistinguishable from this case and, hence, controls this case unless we overrule it. The dissent is wrong. Although the dog in *Newport* would engage in rough play with the plaintiff's dog, the two dogs were *not* playing when the defendant's dog ran into the plaintiff and knocked her down. The plaintiff's claim in *Newport* was based on the proposition that the defendant's dog intentionally ran into the plaintiff while the dog was out in the neighborhood. The issue for us was whether the defendant should have foreseen that her dog would do that and should have taken steps, such as keeping the dog within a fenced area or on a leash, to prevent it from doing that. There was no evidence in the record on which to find that the dog had acted before the incident with the plaintiff in a way that would give the defendant reason to foresee that it would decide to run into someone.

Here, the evidence shows that defendant's dog was doing what it normally did on a play date with the neighbor's dog. It was playing rambunctiously with the other dog while running back and forth between defendant's fenced driveway and backyard. The evidence further suggests that the fenced area was configured in such a way that the dogs could run between the driveway and backyard without seeing or being seen by people before they entered each area. Given those conditions and the size and immaturity of defendant's dog, a trier of fact could find that it was reasonably foreseeable to defendant that his dog would inadvertently run into a person such as plaintiff and knock him down if defendant did not take reasonable steps to prevent it. The trial court therefore erred in dismissing plaintiff's claim.

Reversed and remanded.

**BREWER, J.,** concurring.

I concur in the result reached by the lead opinion but not its reasoning.

**LANDAU, P. J.,** dissenting.

I agree with the lead opinion that plaintiff's status as an invitee or licensee has no bearing on defendant's liability. The sole issue is whether there is evidence that it was foreseeable that, if defendant failed to restrain his dog, the dog would charge and knock someone down. In this case, the lead opinion concludes that there was such evidence. On that point, I disagree.

*Newport v. Moran*, 80 Or App 71, 721 P2d 465, *rev den*, 302 Or 35 (1986), is—excuse the pun—on all fours. In that case, the plaintiff was injured when her next-door neighbor's dog, Rowdy, ran into her. *Id.* at 73. Rowdy was "very friendly and energetic and often engaged in rough play with [the] plaintiff's dog." *Id.* The plaintiff was even somewhat "nervous around the energetic Rowdy" and carried a stick to ward him off when she was outside. *Id.* The jury returned a verdict for the plaintiff, and we reversed, holding that the evidence was insufficient to demonstrate that the defendant had reason to know that Rowdy would charge and knock anyone down if unrestrained. *Id.* at 74-75. We concluded that there was no evidence that Rowdy was vicious or "that he had ever run into or injured any person before [the] plaintiff was injured." *Id.* at 73.

In this case, as in *Newport*, defendant's dog was apparently very energetic. Likewise, in this case, as in *Newport*, defendant's dog was known to engage in "rambunctious" play with the neighbor's dog. And, in this case, as in *Newport*, there is no evidence that defendant's dog was vicious or that he had ever run into or injured another person before plaintiff was injured. It necessarily follows that, if the evidence was insufficient in *Newport*, the same evidence is insufficient in this case.

The lead opinion insists that *Newport* is distinguishable because neither the defendant nor the plaintiff in that

case expected Rowdy to behave as he did. But that is nothing more than a conclusion, not an explanation of how this case is materially different.

If the lead opinion believes *Newport* to have been wrongly decided, then it should say so. But, if *Newport* is still good law, then the trial court correctly concluded that the evidence in this case was insufficient, and the majority errs in concluding otherwise.