**John Mark LARSEN, Appellant (Plaintiff),**

v.

**CITY OF CHEYENNE, Wyoming, and Cheyenne Animal Shelter, Inc., Appellees (Defendants).**

**No. 5407.**

Supreme Court of Wyoming.

April 9, 1981.

E. James Burke, Hanes, Gage & Burke, P. C., Cheyenne, for appellant.

G. G. Greenlee and Robert M. Shively (argued), Murane & Bostwick, Casper, for appellees.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and O'BRIEN, District Judge.

ROONEY, Justice.

This is an appeal from a summary judgment for defendants-appellees in an action by plaintiff-appellant for damages resulting from a dog bite. The dog was released to a third party from impoundment by appellees with knowledge on their part of its vicious nature.

We affirm.

On appeal from a summary judgment, " * * * we look at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from facts contained in affidavits, exhibits, and depositions, [citations]." *Miller v. Reiman-Wuerth Company*, Wyo., 598 P.2d 20, 24 (1979).

Under such standard, the facts of record which are pertinent to our review are as follows: Appellee City of Cheyenne contracted with appellee Cheyenne Animal Shelter, Inc. to operate the city's animal control and detention pound.[1] On July 9, 1976, a Saint Bernard dog was brought to the pound for having bitten someone. The dog had been in the pound on several previous occasions. It evidenced its vicious nature while in the pound. Although dogs are usually killed if not claimed or adopted within three to five days, this dog was kept in the pound until August 11, 1976, when it was adopted by Pat Haddeman, a brother of the dog warden. On August 20, 1976, the dog bit the face of appellant, a roommate of Pat Haddeman, severely injuring him.

Although recognizing that there could be issues of fact in this case, the district court

---

1. Section 15-1-103, W.S.1977, Cum.Supp.1980, provides in pertinent part:

"(a) All cities and towns have the following powers which may be exercised by their governing bodies:

\* \* \* \* \* \*

"(xiv) Regulate or prohibit the running at large within the city limits of any animals, impose a license fee for the keeping or harboring of dogs and establish and provide for the operation of a pound;"

granted the summary judgment on the ground that appellees did not owe a duty to appellant under the circumstances of it. Appellant contends in this appeal that appellees *did* owe a duty to conduct the pound activities in a manner which would protect appellant and the general public and that such duty is inferable from the ordinances of appellee City of Cheyenne.[2]

At common law, the liability for damages occasioned by a known vicious dog was placed on the owner, keeper or harborer. See 4 Am.Jur.2d Animals §§ 86, 92, 94 and 98. The liability need not be predicated on negligence.

" * * * As a rule, therefore, unless the owner or keeper can be relieved by some act or omission on the part of the person injured, his liability may be said to be absolute." (Footnote omitted.) 4 Am. Jur.2d Animals § 94, supra; *Borden v. City of Salem*, 249 Or. 39, 436 P.2d 734 (1968).

In this instance, appellees were not the owners, keepers or harborers of the Saint Bernard. Pat Haddeman had taken over such status. The action was founded in negligence.

Appellant points to the following provisions then in the Cheyenne City Code from which he contends a duty on the part of appellees may be inferred:

" 'No person, shall own, keep, harbor or allow to be upon any premises occupied by him or under his charge or control, any notoriously vicious or cross dog, * * * that may manifest a disposition to bite anyone, without having such animal properly secured or muzzled. Upon conviction of any person violating this section, the police judge may, * * * order any police officer to forthwith cause such animal to be killed, and for that purpose any officer charged with such duty shall have the right to enter upon any premises within the City.' City of Cheyenne Municipal Code, § 7–6."

"Section 7–64 of the Cheyenne Code provides:

" 'Impounded unregistered animals or fowl shall be detained in the pound for a period of three (3) days before being disposed of pursuant to section 7–67. Impounded licensed dogs and cats shall be detained in the pound for a period of five (5) days before being disposed of pursuant to section 7–67.'

"Section 7–67 of the Cheyenne Code provides:

" 'If any animal is not redeemed from the pound in the manner and time as provided in this article, the rabies control authority may dispose of it by destroying it or selling it for an amount equal to the fees for taking up, receiving and keeping it.' "

■ Inasmuch as appellees were not within the class designated by § 7–6 at the time of the incident, a duty on them is not imposed thereby. Sections 7–64 and 7–67 do not prohibit the adoption of the dog as here made. Nor do they impose a duty or course of action with reference to a vicious dog.

■ Although not stated as such by appellant, it can be inferred from his argument that appellees had a duty to kill the dog rather than allowing an adoption of it. Section 7–67 of the City Code, supra, does not so mandate. It gives discretion in this respect to appellees. Killing of a vicious dog is not a requirement at common law.

"* * * [M]ost authorities clearly recognize a right in the owner of a vicious dog to keep it for the necessary protection of life and property, * * *." 4 Am.Jur.2d Animals § 94, supra.

Appellant does not contend that appellees' negligence consisted of an adoption of the dog to an inappropriate or incompetent

---

**2.** Appellant's argument also pertains to a contention that there was a failure on the part of appellees to act reasonably under the circumstances. The question of reasonableness comes into play in a negligence action in connection with the violation of a duty. If there is no duty, the proposition is not reached. The elements of a negligence action are: a duty on the part of the defendant, failure to perform the duty, proximately causing damage to plaintiff. *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979).

person. This was probably because such was obviously not so. Pat Haddeman was made fully aware of the vicious habits of the dog, and he had worked for appellee Cheyenne Animal Shelter, Inc.

Absent imposition of a duty in common law or by statute, courts cannot attach liability. We are aware of recent incidents of serious injuries and even death caused by dogs with the resulting public outcry, but correctional action is a legislative matter.[3]

We agree with the statement of the district court that:

"Here, the dominion, possession and control of this animal passed from the defendants a lengthy period of time prior to the incident; and the plaintiff is unable to point to common law or statute to justify the imposition of liability upon the defendants in this case."

In our affirmance of this case, we are not passing upon the question of liability in instances wherein the impounding authorities fail to carry out their responsibilities (1) to keep a dog throughout a quarantine period, (2) to impound known vicious dogs running at large, (3) to kill a known vicious dog not adopted to an appropriate person, and (4) to control a known vicious dog owned, kept or harbored by them at the time of the incident, as were the situations in the cases cited by appellant, i. e. *Borden v. City of Salem*, supra; *Hansen v. City of Saint Paul*, 298 Minn. 205, 214 N.W.2d 346 (1974); *Wright v. Brown*, 167 Conn. 464, 356 A.2d 176 (1975).

Affirmed.

---

**3.** A 1979 enactment, § 11–31–301, W.S.1977, Cum.Supp.1980, was directed at control of dogs running at large within unincorporated portions of counties. It contained a provision that:

"(e) Any dog attacking any person in a vicious manner may be destroyed and the owner or custodian of the dog may be fined not more than two hundred dollars ($200.00). Proof of the fact that the dog has bitten or attacked any person at any place where a person is legally entitled to be is evidence that the dog is vicious within the meaning of this act."